IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DR. JOHN C. ROSERO,                    *

     Plaintiff,                           *

v.                                     *          Civil Action No. GLR-21-588

JOHNSON, MIRMIRAN &                    *
THOMPSON, INC., et al.
                                       *
     Defendants.

               ***

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants Johnson, Mirmiran & Thompson, Inc. ("JMT") and Michael Hild's Motion to Dismiss (ECF No. 4). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2021). For the reasons set forth below, the Court will grant the Motion in part and deny the Motion in part.

## I.   BACKGROUND[1]

### A.   Rosero's Allegations of Discrimination Against JMT and Hild

This case relates to Plaintiff Dr. John C. Rosero's former employment with JMT as a project manager. (Compl. ¶ 11, ECF No. 1). Rosero, a fifty-nine-year-old Hispanic male, worked for JMT from June 2010 until he was fired on June 27, 2019. (Compl. ¶¶ 11, 19(b), 36). He brings this action pro se against JMT and Michael Hild, his former manager, alleging that Defendants discriminated and retaliated against him based on his race, color,

---

[1] Unless otherwise noted, the Court takes the following facts from the Complaint (ECF No. 1) and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

and national origin in violation of Title VII of the Civil Rights Act of 1964. (Id. ¶ 13); see 42 U.S.C. § 2000e et seq.

Rosero started working for JMT on June 17, 2010. (Compl. ¶ 11). Rosero holds a Ph.D., has substantial experience in structural design engineering, and is cross trained in construction management and design. (Id. ¶ 15). Rosero managed several significant projects in Baltimore City and for Washington Gas. (Id. ¶¶ 17, 27(b)). On top of these responsibilities, he wrote proposals and interacted with clients. (Id. ¶ 27(d)). Rosero reported to Jeffery Cerquetti, who in turn reported to Hild. (Id. ¶¶ 11–12). Rosero maintained high reviews for the quality of his work and received "an excellent job performance rating." (Id. ¶¶ 14–16).

At some point in 2016, Rosero alleges that Defendants and certain other unidentified workers had been "discriminat[ing] against and harass[ing]" him based on his national origin. (Id. ¶ 13). Rosero eventually decided to meet with JMT's human resources department ("HR") to discuss his experiences. (Id. ¶ 22). On December 21, 2018, Rosero met with Heather Chism, Vice President of the HR department. (Id. ¶ 23). Rosero complained that Hild was targeting him and making "unjustified defaming statements" about his work and qualifications to pressure Cerquetti into firing him. (Id. ¶ 22). He further indicated that his position was stagnant and other, less qualified people were being promoted over him. (Id. ¶ 25). Hild was allegedly "allowed to bad mouth [whichever] minority employee" he chose. (Id. ¶ 26). On December 27, 2018, Rosero lodged a formal complaint with HR on the grounds that Hild "treated nonwhite employees less favorably

on the bases of sex, age, and race." (Id. ¶ 23). Rosero avers that Hild's conduct has affected him physically and emotionally. (Id. ¶ 26).

Rosero alleges that after he made his complaint to HR, Hild and JMT generally began to retaliate against him. JMT fired Cerquetti, an ally of Rosero's who allegedly had substantiated Rosero's and others' allegations of discrimination. (Id. ¶ 27(a)). Defendants further removed Rosero from his role as project manager on his long-term work with Baltimore City and Washington Gas. (Id. ¶ 27(b)). Rosero was no longer permitted to submit work proposals or interact with clients, and his remaining work was reassigned to others in his group. (Id. ¶ 27(d)). Rosero alleges that Defendants deliberately stripped his work away in order to make Rosero's position "redundant" and eventually justify firing him. (Id.). Rosero avers that he was made to clean out offices and that he was directed to leave his own office so a new staff member could have it. (Id. ¶ 27(f)–(g)). He also claims that Hild began to "surveil[]" him after he made his complaint and would no longer allow Rosero to work from home. (Id. ¶ 27(i)).

Finally, on June 27, 2019, about six months after Rosero made his formal complaint, JMT terminated his employment. (Id. ¶ 36). Rosero alleges that his termination "was pretextual" and that he was actually fired "based on his sex, age, race, his actual and/or perceived disability, and in retaliation for opposing unlawful discrimination in the workplace." (Id. ¶ 37).

**B.    Administrative Background**

On August 26, 2019, Rosero filed a charge of discrimination (the "EEOC Charge") with the United States Equal Employment Opportunity Commission. (Id. ¶ 39; see Charge

Discrimination ["EEOC Charge"] at 1, ECF No. 4-2). In his EEOC Charge, Rosero claimed that he was discriminated against based on race, national origin, and that he experienced retaliation. (EEOC Charge at 1). In the brief section that allows for claimants to provide the details of the alleged discrimination, Rosero wrote that "Hild treated non-white employees less favorabl[y]" and that Rosero was retaliated against because he engaged in protected activity related to his race and national origin. (Id.). The EEOC did not reach a decision on the merits, but on December 9, 2020, it issued a Dismissal and Notice of Rights advising Rosero of his right to file a lawsuit within ninety days. (EEOC Dismissal at 1, ECF No. 4-3).

## C.   **Procedural History**

On March 8, 2021, Rosero, who is self-represented, filed this action against Hild and JMT. (ECF No. 1). The Complaint alleges: discrimination and hostile work environment in violation of Title VII against JMT (Count I); retaliation in violation of Title VII against both Defendants (Count II); discrimination and hostile work environment against Hild (Count III); unlawful discharge under Md. Code Ann., Art. 49B, § 16,[2] against both Defendants (Count IV); wrongful constructive termination against JMT (Count V); and another claim of retaliation against JMT (Count VI). (Compl. ¶¶ 46–88). Rosero seeks

---

[2] Section 16 of Article 49B of the Maryland Code refers to a now-repealed Maryland statute prohibiting employment discrimination. Liberally construing Rosero's pro se Complaint, the Court will interpret Count IV as asserting a claim under the current Maryland law prohibiting employment discrimination, the Maryland Fair Employment Practices Act, Md. Code Ann., State Gov't § 20-601 et seq. ("FEPA").

actual and compensatory damages, punitive damages, litigation costs, attorneys' fees, interest, and expert witness fees. (Id. at 19).

On June 7, 2021, Defendants filed a Motion to Dismiss (ECF No. 4). Rosero filed an Opposition on July 2, 2021, (ECF No. 7), and Defendants filed a Reply on July 9, 2021, (ECF No. 8).

## II.   DISCUSSION

### A.   <u>Standard of Review</u>

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." <u>King v. Rubenstein</u>, 825 F.3d 206, 214 (4th Cir. 2016) (quoting <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. <u>Goss v. Bank of Am., N.A.</u>, 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting <u>Walters v. McMahen</u>, 684 F.3d 435, 439 (4th Cir. 2012)), <u>aff'd</u>, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, accept the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. See Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

Pro se pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Pro se complaints are entitled to special care to determine whether any possible set of facts would entitle the plaintiff to relief. Hughes v. Rowe, 449 U.S. 5, 9–10 (1980). But even a pro se complaint must be dismissed if it does not allege "a plausible claim for relief." Forquer v. Schlee, No. RDB-12-969, 2012 WL 6087491, at *3 (D.Md. Dec. 4, 2012) (internal quotation marks omitted).

**B.   Analysis**

**1.   Exhaustion of Administrative Remedies**

First, Defendants argue that Rosero's Complaint relies upon facts that are outside of the scope of his underlying EEOC Charge. Before bringing a judicial action alleging employment discrimination under Title VII, an employee must exhaust his administrative remedies by filing a charge of discrimination with the EEOC. See 42 U.S.C. § 2000e-5(f)(1). The requirement is "an integral part of the Title VII enforcement scheme" as it puts

employers on notice of alleged violations. Sydnor v. Fairfax Cnty., 681 F.3d 591, 593 (4th Cir. 2012) (quoting Chacko v. Patuxent Inst., 429 F.3d 505, 510 (4th Cir. 2005)). It further provides the parties with the opportunity to resolve conflicts before filing suit. Id.

A plaintiff may not raise claims in litigation that did not appear in his EEOC charge. Id. Accordingly, the "scope of the plaintiff's right to file a federal lawsuit is determined by the charge's contents." Id. (quoting Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009)). "[A] plaintiff fails to exhaust his administrative remedies where . . . his administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit." Id. (quoting Chacko, 429 F.3d at 506). Still, "the exhaustion requirement should not become a tripwire for hapless plaintiffs." Id. at 594. As such, while courts do not want to reward clever plaintiffs for avoiding statutory requirements, they "may not erect insurmountable barriers to litigation out of overly technical concerns." Id. Indeed, an "administrative charge of discrimination does not strictly limit a Title VII suit which may follow." Id. (quoting Miles v. Dell, Inc., 429 F.3d 480, 491 (4th Cir. 2005)). Rather, as long as "a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, she may advance such claims in her subsequent civil suit." Id. (quoting Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000)) (internal quotation marks omitted).

First, the Court notes that Defendants assert that Rosero's alleged failure to exhaust his administrative remedies leaves this Court without subject-matter jurisdiction to hear his case. (Mem. Law Supp. Defs.' Mot. Dismiss ["Mot."] at 4, ECF No. 4-1). Defendants are

mistaken. "In recent years, the Supreme Court repeatedly has cautioned courts not to 'confuse[] or conflate[]' subject-matter jurisdiction, on the one hand, with the 'essential ingredients of a federal claim for relief,' on the other." Stewart v. Iancu, 912 F.3d 693, 700 (4th Cir. 2019) (quoting Arbaugh v. Y & H Corp., 546 U.S. 500, 503 (2006)). Rule 12(b)(1) is therefore inapplicable here as exhaustion is not a jurisdictional issue. Johnson v. Md. DLLR, 386 F.Supp.3d 608, 614 (D.Md. 2019). Rather, it is an affirmative defense that may be raised by a defendant. Id.

In any event, Defendants argue that Rosero has raised claims in his Complaint that he did not bring in his EEO Charge and therefore has not exhausted his administrative remedies as to those claims. (Mot. at 10). Specifically, they contend that although Rosero only alleged retaliation based on race and national origin in his EEOC Charge, he includes allegations of discrimination on the basis of gender, color, age, and disability in his Complaint to this Court. (Id. at 10; Compl. ¶ 53). Further, Defendants assert that Rosero "fail[ed] to include any facts in the narrative of his Charge of Discrimination to support a claim for hostile work environment." (Mot. at 10). At bottom, the Court finds that Rosero improperly extends the scope of his claims to include gender, age, and disability, but also finds that his claim based on "color" may be raised here.

Here, Rosero filed a timely administrative charge with the EEOC regarding Defendants. See 42 U.S.C. § 2000e-5; (EEOC Charge at 1). His EEOC Charge and this lawsuit reference the same actors—Hild and JMT generally. On Rosero's EEOC Charge, he "checked three boxes" regarding Defendants' conduct, those referring to retaliation and

discrimination based on race and national origin. (Mot. at 10; EEOC Charge at 1). Further,

the EEOC Charge describes the "particulars" of Rosero's claims as follows:

> I. I began my employment with the above-named employer on June 17, 2010, as a Project Manager. On December 27, 2018, I complained to Human Resources that Senior Vice President Mike Hild treated non-white employees less favorabl[y]. On June 27, 2019, I was discharged.
>
> II. Respondent failed to take corrective action regarding my complaint. Respondent has not provided a reasonable explanation for my discharge.
>
> III. I believe I was retaliated against for engaging in a protected activity because of my race (non-white) and national origin (Hispanic) with respect to discharge, in violation of Title VII of the Civil Rights Act of 1964, as amended.

(EEOC Charge at 1). Rosero alleges in his Complaint, however, that he was "terminated

based on his sex, age, race, [] actual and/or perceived disability, and in retaliation for

opposing unlawful discrimination in the workplace and requesting a reasonable work from

home." (Compl. ¶ 37). Rosero's EEOC Charge makes no mention of any alleged

discrimination based on sex, age, or disability, nor do those claims reasonably relate to or

follow from his EEOC Charge. (See EEOC Charge at 1). Therefore, Rosero has failed to

exhaust his administrative remedies as to those claims.

Finally, although Rosero did not check off the box that corresponds with "color" on

his EEOC Charge, the Court finds that his factual allegations cover his claim of

discrimination based on color. Rosero writes that Hild "treated non-white employees less

favorabl[y]" and that he was retaliated against because he is "non-white." (Id.). Rosero

accordingly raised factual claims that appear connected to the broad category of "color."

Further, the Court recognizes that Rosero was self-represented before the EEOC, as he is here. Construing his administrative charge liberally, the Court finds that Rosero exhausted his administrative remedies regarding discrimination based on "color." See Chacko, 429 F.3d at 509. Accordingly, the Court will dismiss any claims of discrimination based upon sex, age, or disability for failure to exhaust administrative remedies, but will leave intact Rosero's discrimination and retaliation claims based on race, color, and national origin.

### 2. Title VII Claims Against Mike Hild

Next, the Court will address whether Rosero can bring claims against Mike Hild individually for his allegedly discriminatory conduct as Rosero's manager. Rosero asserts claims against Hild for retaliation (Count II), discrimination and hostile work environment (Count III), and unlawful discharge (Count IV). (Compl. ¶¶ 59–76). As Hild cannot be held individually liable under Title VII or Maryland law, the Court will dismiss Rosero's claims against him.

"[S]upervisors are not liable in their individual capacities for Title VII violations." Lissau v. S. Food Serv., Inc., 159 F.3d 177, 180 (4th Cir. 1998); Gilmore v. Young, No. RDB-20-3506, 2021 WL 1909587, at *3 (D.Md. May 12, 2021). Rather, only employers may be held liable under Title VII. Lissau, 159 F.3d at 181. To hold supervisors liable "would improperly expand the remedial scheme crafted by Congress." Id. Maryland law similarly does not permit such suits against individuals. Gilmore, 2021 WL 1909587, at *3. Accordingly, Rosero cannot allege any facts which would permit him to obtain relief from Mike Hild individually. The Court will therefore dismiss Counts II, III, and IV to the extent they assert claims against Mike Hild in his individual capacity.

### 3.    Title VII Claims Against JMT

The Court turns next to Rosero's Title VII claims against JMT. JMT challenges Rosero's claims of retaliation (Counts II & VI) and hostile work environment (Count I).[3] The Court will address each claim in turn.

### a.    Retaliation

Rosero alleges in Counts II and VI that he was retaliated against for complaining to HR about Hild's allegedly discriminatory behavior on December 27, 2018. (Compl. ¶¶ 59–64, 83–88). JMT argues that the lapse of time between Rosero's HR complaint and his termination—six months—is too significant to establish a causal connection.[4] (Mot. at 18). Although JMT is correct that the temporal proximity alone would be insufficient here, Rosero has shown evidence of recurring retaliatory animus during the intervening period that establishes causation. Accordingly, the Court will deny Defendants' Motion as to Rosero's retaliation claims (Counts II & VI).

---

[3] While Rosero's Complaint is not a model of clarity, a liberal construal of his pro se Complaint suggests he intended to assert separate claims for discrimination and hostile work environment discrimination. See Fisher v. J.O. Spice & Cure Co., No. CCB-19-1793, 2020 WL 363347, at *2 (D.Md. Jan. 22, 2020) ("In contrast to claims based on discrete acts of discrimination, a hostile work environment claim is composed of a series of separate acts that collectively constitute one unlawful employment practice." (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002)) (cleaned up))). Rosero includes in Count I allegations that appear to pertain to both claims of disparate treatment and hostile work environment discrimination. (Compare, e.g., Compl. ¶ 48 with Compl. ¶¶ 50, 51). Defendants do not raise any arguments in their Motion regarding Rosero's claims of discrimination (Counts I & III). Thus, the Court will not review those claims for dismissal.

[4] Defendants do not dispute that Rosero engaged in a protected activity or that he faced an adverse employment action. (Mot. at 16–20).

Title VII bars an employer from firing or otherwise discriminating against any individual because of the individual's race, color, or national origin. 42 U.S.C. § 2000e-2(a). Title VII's anti-retaliation provision is intended to "prevent[] an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees"—in other words, it offers protection to employees who make discrimination claims. DeMasters v. Carilion Clinic, 796 F.3d 409, 416 (4th Cir. 2015) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 63 (2006)). To state a claim for retaliation under Title VII, a plaintiff must allege "(1) that she engaged in a protected activity, as well as (2) that her employer took an adverse employment action against her, and (3) that there was a causal link between the two events." Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 281 (4th Cir. 2015) (quoting EEOC v. Navy Credit Union, 424 F.3d 397, 405–06 (4th Cir. 2005)) (internal quotation marks omitted).

"[T]emporal proximity between an employer's knowledge of protected activity and an adverse employment action suffices to establish a prima facie case of causation where the temporal proximity is 'very close.'" Jenkins v. Gaylord Ent. Co., 840 F.Supp.2d 873, 881 (D.Md. 2012) (quoting Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273–74 (2001)). Here, JMT is correct that the six-month gap between the protected activity and the adverse action is too great to support causation on its own. "Although there is no bright-line rule for temporal proximity," the Fourth Circuit has held that "a lapse of three to four months between the employer's knowledge of protected activity and the alleged retaliation is too long to establish a causal connection by temporal proximity alone." Roberts v. Glenn Indus.

Grp., Inc., 998 F.3d 111, 127 (4th Cir. 2021) (quoting King v. Pulaski Cnty. Sch. Bd., 195 F.Supp.3d 873, 886 (W.D.Va. 2016); Pascual v. Lowe's Home Ctrs., Inc., 193 F.App'x 229, 233 (4th Cir. 2006)) (internal quotation marks omitted).

Nonetheless, Rosero has presented evidence of retaliatory animus between his HR complaint and his termination. In cases where mere temporal proximity is not present, "courts may look to the intervening period for other evidence of retaliatory animus." Lettieri v. Equant, Inc., 478 F.3d 640, 650 (4th Cir. 2007) (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000)). Evidence of recurring animus may be sufficient to satisfy the element of causation. Id.

Rosero provides several examples of retaliatory conduct after his HR complaint was filed in December 2018. (Compl. ¶ 23). Rosero alleges that after he complained to HR, he was pulled from his role as project manager on projects in Baltimore City and with Washington Gas. (Id. ¶ 27(g)). Rosero explains that he had handled those projects for eight years before JMT took them away. (Id.). Rosero further avers that JMT stripped away many of his other job responsibilities. For example, he alleges that he was no longer permitted to write proposals or interact with clients. (Id. ¶ 27(d)). Rosero also alleges that JMT took this work away to limit his role and make him "redundant." (Id.). Further, Rosero claims that he was told to clean out offices and that he was eventually moved out of his office so that a new employee could have it. (Id. ¶ 27(g)). Finally, Rosero avers that Hild began to "surveil" him and he was no longer allowed to work from home, which he could before he filed his complaint. (Id. ¶ 27(i)).

Taken together, these intervening events can reasonably be viewed as demonstrating retaliatory animus and are sufficient to establish a causal link between Rosero's complaint and his eventual termination. See Lettieri, 478 F.3d at 650–51 (holding that a plaintiff was able to show intervening retaliatory animus during a seven-month period where defendants stripped away plaintiff's job responsibilities and took away the authority to meet with clients to justify an argument that plaintiff's position was no longer needed). Accordingly, Rosero has established a prima facie case of retaliation. The Court will deny JMT's Motion as to Counts II and VI.

### b.    Hostile Work Environment

Next, Rosero asserts a claim against JMT for hostile work environment under Title VII (Count I). (See Compl. ¶¶ 46–58). JMT argues that Rosero's hostile work environment claims should be dismissed because Rosero's allegations are threadbare and do not show that the conduct was sufficiently severe or pervasive to constitute a hostile work environment. (Mot. at 11–16). At bottom, the Court agrees that Rosero has not pleaded enough facts to support his hostile work environment claim.

Title VII provides a cause of action for hostile work environment where "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Mustafa v. Iancu, 313 F.Supp.3d 684, 695 (E.D.Va. 2018) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). "A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S.

101, 117 (2002). To state a hostile work environment claim, a plaintiff must plead that there is "(1) unwelcome conduct; (2) that is based on the plaintiff's . . . race[,] [color, or national origin]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." Boyer-Liberto, 786 F.3d at 277 (quoting Okoli v. City of Balt., 648 F.3d 216, 220 (4th Cir. 2011)). In determining whether discriminatory conduct is pervasive enough to render the work environment objectively abusive, courts look to "all the circumstances[,] [which] may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23. "[N]o single factor is required." Id. The court "can consider actions that contributed to the hostile work environment but occurred prior to [the bounds of the statute of limitations], under the continuing violation doctrine." U.S. EEOC v. Phase 2 Invs. Inc., 310 F.Supp.3d 550, 574 (D.Md. 2018). "In order to support a claim for hostile work environment, the alleged conduct must not only 'create an objectively hostile or abusive work environment, [but the] victim must also perceive the environment to be abusive.'" Nicole v. Grafton Sch., Inc., 181 F.Supp.2d 475, 482 (D.Md. 2002) (quoting Spriggs v. Diamond Auto Glass II, 242 F.3d 179, 183 (4th Cir. 2001)).

Here, the allegations that Rosero's mistreatment by Defendants was connected to his race or color are too vague to support his claim. Rosero alleges, as described more fully above, that Defendants limited his role, took away key responsibilities, told him he could no longer work from home, and reassigned his long-term clients to other employees.

Rosero's hostile work environment claim fails, though, because he does not include sufficient factual allegations to connect that treatment with his race or color. Rosero asserts that unidentified employees made "egregious statements . . . expressing animus towards [Rosero's] race, and color." (Compl. ¶ 48). But Rosero does not explain which employees made those statements or provide the content of the statements. Similarly, Rosero alleges that he experienced "constant and unwavering harassment and derogatory comments towards [him] based on his race, and color," but he does not explain how the alleged harassment was connected to his race or color. (Id.). This is insufficient. Rosero's allegations regarding his race or color are too vague for the Court to be able to allow a fact-finder to reasonably conclude that he perceived his environment to be hostile as a result of his status as a protected class. Thus, he does not allege a claim for hostile work environment. See Ruffin v. Lockheed Martin Corp., 126 F.Supp.3d 521, 530 (D.Md. 2015) (dismissing hostile work environment claim on the basis that the "complaint is devoid of factual allegations that the hostile work environment was because of her race []or membership in any other protected class[]"), aff'd, 659 F.App'x 744 (4th Cir. 2016).. Accordingly, the Court will grant JMT's Motion as to Count I.[5]

---

[5] The Court understands that Rosero is proceeding pro se and has made broad and unspecific allegations of discriminatory statements. (See, e.g., Compl. ¶ 48). To the extent Rosero is aware of specific facts supporting those broad claims and which may demonstrate that the hostile work environment he allegedly experienced is tied to his membership in a protected class, he may seek leave to amend under Federal Rule of Civil Procedure 15(a)(2).

4.      **Maryland Law Claims Against JMT**

      a.      **Wrongful Discharge - Maryland Fair Employment Practices Act**

Rosero raises a claim for unlawful, or wrongful, discharge under Section 16 of Article 49B of the Maryland Code. (Count IV). As explained above, that provision has since been repealed. Liberally construing Rosero's pro se Complaint, the Court will assess Rosero's claim under the current Maryland law prohibiting employment discrimination, the Maryland Fair Employment Practices Act, Md. Code Ann., State Gov't § 20-601 et seq. ("FEPA"). The Court's analysis with respect to Rosero's claims under Title VII applies equally to his claims under the FEPA. See Hurst v. D.C., 681 F.App'x 186, 187 n.1 (4th Cir. 2017) ("We consider [plaintiff's] state and federal claims together, as the Maryland Court of Appeals has deemed [the] Maryland Fair Employment Practices Act to be the state law analogue of Title VII, and has noted that Maryland courts 'traditionally seek guidance from federal cases in interpreting Maryland's [FEPA].'" (quoting Haas v. Lockheed Martin Corp., 914 A.2d 735, 742 (Md. 2007))).

The Court has only dismissed Rosero's claims of hostile work environment and his claims against Hild. Rosero's state law claim alleges only "unlawful discharge" and therefore does not raise an allegation of hostile work environment. Accordingly, the Court will dismiss Count IV as it pertains to Hild but will otherwise deny Defendants' Motion to dismiss this Count.

      b.      **Wrongful Discharge – Maryland Common Law**

Finally, Rosero asserts a claim for wrongful constructive discharge (Count V). "[A] constructive discharge occurs . . . when an employer deliberately causes or allows the

employee's working conditions to become so intolerable that the employee is forced into an involuntary resignation." Jackson v. Clark, 564 F.Supp.2d 483, 492 (D.Md. 2008) (quoting Beye v. Bureau of Nat'l Affairs, 477 A.2d 1197, 1201 (Md.Ct.Spec.App. 1984)) (internal quotation marks omitted). Maryland courts assess constructive discharge using an objective standard to determine "whether a reasonable person in the employee's shoes would have felt compelled to resign." Id. (quoting Beye, 477 A.2d at 1202). Here, Rosero does not state a claim for wrongful constructive discharge because he alleges he was fired and not forced to resign. Still, because Rosero raises some allegations that could apply to a claim for wrongful discharge under state law, the Court will interpret this claim as one for wrongful discharge in violation of public policy.

"The tort of wrongful discharge is an exception to the well-established principle that an at-will employee may be discharged by his employer for any reason, or no reason at all." Miller v. U.S. Foodservice, Inc., 405 F.Supp.2d 607, 610 (D.Md. 2005). "[T]o establish wrongful discharge, the employee must be discharged, the basis for the employee discharge must violate some clear mandate of public policy, and there must be a nexus between the employee's conduct and the employer's decision to fire the employee." Id. (quoting Wholey v. Sears Roebuck, 803 A.2d 482, 489 (Md. 2002)). An employee asserting wrongful discharge "must specifically identify the clear mandate of Maryland public policy that was violated by his termination." Szaller v. Am. Nat'l Red Cross, 293 F.3d 148, 151 (4th Cir. 2002). "[T]here must be a preexisting, unambiguous, and particularized pronouncement, by constitution, enactment or prior judicial decision, directing, prohibiting, or protecting the conduct in question" so that the matter is not one of conjecture

18

or interpretation. <u>Miller</u>, 405 F.Supp.2d at 610 (quoting <u>King v. Marriott Int'l, Inc.</u>, 866 A.2d 895, 903 (2005)).

As far as the Court can tell, the only public policy Rosero has alleged that JMT violated is the policy against workplace discrimination found in Title VII and its state analog. But "because the 'generally accepted reason for recognizing the tort' [of wrongful discharge] is 'that of vindicating an otherwise civilly unremedied public policy violation,' the tort does not apply to cases alleging employment discrimination prohibited by Title VII or the Maryland Fair Employment Practices Act, because the law already supplies a civil remedy." <u>Lewis-Davis v. Bd. of Educ. of Baltimore Cnty.</u>, No. ELH-20-0423, 2021 WL 4772918, at *23 (D.Md. Oct. 13, 2021) (quoting <u>Makovi v. Sherwin-Williams Co.</u>, 561 A.2d 179, 190 (Md. 1989)). Accordingly, Rosero has failed to state a claim for wrongful discharge in violation of public policy.

## III.    CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss (ECF No. 4) in part and will deny the Motion in part. A separate Order follows.

Entered this 28th day of March, 2022.


                                        /s/
                                George L. Russell, III
                                United States District Judge