UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

Chambers of
**George L. Russell, III**
United States District Judge

101 West Lombard Street
Baltimore, Maryland 21201
410-962-4055

September 11, 2023

MEMORANDUM TO PARTIES RE:     Dr. John C. Rosero v. Johnson, Mirmiran & Thompson, Inc., et al.
Civil Action No. GLR-21-588

Dear Parties:

Pending before the Court are Defendant Johnson, Mirmiran & Thompson's ("JMT") Motion for Summary Judgment (ECF No. 41) and Plaintiff John C. Rosero's Motion for Sanctions (ECF No. 48). The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2023). For the reasons set forth below, the Court will grant JMT's Motion for Summary Judgment and deny Rosero's Motion for Sanctions.

This case relates to Plaintiff Dr. John C. Rosero's former employment with Defendant JMT as a project manager. (Compl. ¶ 11, ECF No. 1). Rosero, a fifty-nine-year-old Hispanic male, worked for JMT from June 2010 until he was fired on June 27, 2019. (Compl. ¶¶ 11, 19(b), 36). For concision purposes, additional facts are included below.

On August 26, 2019, Rosero filed a charge of discrimination (the "EEOC Charge") with the United States Equal Employment Opportunity Commission ("EEOC"). (Id. ¶ 39; see Charge Discrimination ["EEOC Charge"] at 1, ECF No. 4-2). In his EEOC Charge, Rosero claimed that he was discriminated against based on race and national origin, and that he experienced retaliation. (EEOC Charge at 1). In the section that allows for claimants to provide the details of the alleged discrimination, Rosero wrote that the now dismissed Defendant Michael Hild "treated non-white employees less favorabl[y]" and that Rosero was retaliated against because he engaged in a protected activity related to his race and national origin. (Id.). The EEOC did not reach a decision on the merits, but on December 9, 2020, it issued a Dismissal and Notice of Rights advising Rosero of his right to file a lawsuit within ninety days. (EEOC Dismissal at 1, ECF No. 4-3).

Rosero brings this action pro se against JMT alleging: discrimination and hostile work environment in violation of Title VII against JMT (Count I); retaliation in violation of Title VII against JMT and Hild (Count II); discrimination and hostile work environment against Hild (Count III); unlawful discharge under Md. Code Ann., Art. 49B, § 16,[1] against JMT and Hild (Count IV);

---

[1] Section 16 of Article 49B of the Maryland Code refers to a now-repealed Maryland statute prohibiting employment discrimination. In its Memorandum Opinion on JMT's Motion to Dismiss, the Court interpreted Count IV as asserting a claim under the current Maryland law

wrongful constructive termination against JMT (Count V); and another claim of retaliation against JMT (Count VI). (Compl. ¶¶ 46–88).

On June 7, 2021, Defendants JMT and Hild filed a Motion to Dismiss. (ECF No. 4). Rosero filed an Opposition on July 2, 2021, (ECF No. 7), and Defendants filed a Reply on July 9, 2021, (ECF No. 8). On March 28, 2022, the Court issued a Memorandum Opinion dismissing Counts I, III, and V as to Rosero's claims against JMT and all claims against Hild. (ECF No. 9). Accordingly, the surviving counts are Counts II and VI, each alleging retaliation under Title VII, and Count IV, wrongful discharge under the Maryland Fair Employment Practices Act, Md. Code Ann., State Gov't § 20-601 et seq. ("FEPA").

On July 14, 2022, Rosero filed a Motion for Sanctions against JMT for "[m]isconduct by Defense Counsel and willful omission of facts" to the Court. (Pl.'s Mot. Sanctions at 1, ECF No. 26). Rosero argued that JMT had abused the discovery process and acted in bad faith by making its discovery requests. (Id.). On August 2, 2022, the Court referred the matter to the Honorable A. David Copperthite, United States Magistrate Judge ("USMJ"), for handling of the discovery dispute and any allegations regarding Rosero's request for sanctions. (ECF No. 30) Judge Copperthite held a hearing on August 30, 2022, found that the claim for sanctions was meritless, and ordered Rosero to respond to JMT's discovery requests within seven days, or by September 6, 2022. (ECF No. 23).

On September 13, 2022, Rosero filed Objections to the August 30, 2022 Order. (ECF No. 37). On October 10, 2022, Rosero filed a Motion to Reopen Discovery for an additional ninety days, stating that he has been unable to propound discovery "as a direct result of Defense misconduct." (Pl.'s Mot. Reopen Disc. at 1, ECF No. 38). On October 25, 2022, the Court issued a Letter Order overruling Rosero's Objections, again denying the Motion for Sanctions, and denying Rosero's Motion to Reopen Discovery.[2] (Oct. 25, 2022 Letter Order at 4–5, ECF No. 40).

On November 15, 2022, JMT filed a Motion for Summary Judgment. (ECF No. 41). On December 14, 2022, Rosero filed an Opposition. (ECF No. 43). On January 11, 2023, JMT filed a Reply. (ECF No. 47).

On January 17, 2023, Rosero filed an Emergency Motion for Sanctions against Defense Counsel and Defendant JMT. (ECF No. 48). That same day, JMT filed a letter in response. (ECF No. 49).

**Standard of Review**

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v.

---

prohibiting employment discrimination, the Maryland Fair Employment Practices Act, Md. Code Ann., State Gov't § 20-601 et seq. ("FEPA"). (See Mar. 28, 2022 Mem. Op. at 17, ECF No. 9).

[2] In its Letter Order, the Court noted that "sanctions on JMT would be entirely inappropriate" and indicated further that Rosero had "opened himself up to sanctions by failing to adequately respond to written discovery." (Oct. 25, 2022 Letter Order at 4).

DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is a genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 140 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Washington Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) ("The existence of an alleged factual dispute between the parties will not defeat a properly supported motion for summary judgment, unless the disputed fact is one that might affect the outcome of the litigation."). Whether a fact is considered to be "material" is determined by the substantive law. Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant fails to make a sufficient showing on an essential element of his case where he has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986) (quoting Fed.R.Civ.P. 56(c)).

**Retaliation under Title VII**

JMT contends that it is entitled to summary judgment as to Rosero's claims for retaliation under Title VII (Counts II, VI). The Court agrees.

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." Perkins v. Int'l Paper Co., 936 F.3d 196, 205 (4th Cir. 2019) (quoting 42 U.S.C. § 2000e-2). Title VII further forbids discrimination based on an employee's "opposition to conduct made unlawful by Title VII or participation in any Title VII investigation, proceeding or hearing." Id. at 205–06 (citing 42 U.S.C. § 2000e-3). A plaintiff has two methods of proof to avoid summary judgment with regard to a Title VII retaliation claim: the mixed-motive framework or the pretext framework using the McDonnell Douglas burden-shifting analysis. Id. at 204 n.4. Rosero does not have direct evidence of discrimination, and thus the Court will apply the McDonnell Douglas

3

factors. (See Pl.'s Mem. Opp'n Mot. Summ. J. ["Opp'n"] at 5–10, ECF No. 43) (attempting to make out a prima facie case).

To establish a prima facie case for retaliation, a plaintiff must show that "(1) the plaintiff engaged in a protected activity, such as filing a complaint with the EEOC; (2) the employer acted adversely against the plaintiff; and (3) the protected activity was causally connected to the employer's adverse action." Rodgers v. Eagle All., -- F.Supp.3d ---, 2022 WL 541162, at *445 (D.Md. 2022) (quoting Okoli v. City of Balt., 648 F.3d 216, 223 (4th Cir. 2011)). "[A] plaintiff must show that his employer 'took the adverse action because of the protected activity.'" Roberts v. Glenn Indus. Grp., Inc., 998 F.3d 111, 123 (4th Cir. 2021) (quoting Bryant v. Aiken Reg'l Med. Ctrs., Inc., 333 F.3d 536, 543 (4th Cir. 2003)).

Under the McDonnell Douglas framework, once a plaintiff establishes a prima facie case of retaliation, the burden shifts to the employer "to show that its purportedly retaliatory action was in fact the result of a legitimate non-retaliatory reason." Lewis v. Balt. City Bd. of Sch. Comm'rs, 187 F.Supp.3d 588, 595–96 (D.Md. 2016) (quoting Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 250 (4th Cir. 2015)). "Where . . . the employer produces a legitimate, non-retaliatory reason for the termination, the plaintiff bears the burden of offering evidence that the proffered reason is pretextual." Jaudon v. Elder Health, Inc., 125 F.Supp.2d 153, 169 (D.Md. 2000).

Rosero claims that he was "criticized, forced to give up all his projects and eventually made to clean offices and take out t[]rash" after he made his discrimination complaint. (Opp'n at 8). Rosero cites generally to his Declaration, which he contends "includes documented evidence to dispel[] JMT's denial of retaliation entirely." (Id. at 8–9). Rosero further references "substantial documentation that proves that retaliation and disparate treatment was continuous" without identifying any documents in the record. (Id. at 9). Finally, Rosero indicates that Jeffrey Cerquetti, his former supervisor, was terminated after he "corroborat[ed] . . . that minority employees were being treated differently than white employees and that Plaintiff, Dr. Rosero, was being targeted and treated differently than all white employees." (Id. at 10).

Even assuming Rosero has demonstrated a prima facie case, which is entirely unclear from the materials he has submitted, he cannot show that JMT's legitimate, non-discriminatory reasons for terminating him are a pretext for retaliation. The Court explains.

First, JMT cites evidence that Rosero's demeanor was unsatisfactory. (Mem. L. Supp. Mot. Summ. J. ["Mot. Summ. J."] at 16, ECF No. 41-1). Cerquetti testified that Rosero had a reputation for being "abrasive" and "hard to work with." (Dep. Jeffrey Cerquetti ["Cerquetti Dep."] at 58:8–10, ECF No. 41-5). Cerquetti also stated that Rosero had an "approach that . . . irritates people." (Id. at 59:9–12).

Further, JMT emphasizes that the decision to terminate Rosero was a financial one, and that Cerquetti was not fired for supporting Rosero, nor was he aware of any purported discrimination. During Cerquetti's deposition, he repeatedly testified that he did not have knowledge of any discriminatory intent directed at Rosero. (See, e.g., Cerquetti Dep. at 97:9–11). Cerquetti testified further that he never heard Hild make discriminatory statements about Rosero, (id.); that when he discussed terminating certain people on his team with Hild, race was not used

4

as a basis to make any decisions, (id. at 62:13–20); and that no discriminatory reasons were used to make termination decisions regarding any employees, (id. at 62:21–63:6).

Additionally, JMT cites testimony that Rosero's team at JMT was struggling financially for years and, as a result, JMT was forced to fire multiple employees to improve profitability. Specifically, Cerquetti testified that their team operated at a loss of $266,179 in 2017 and was the lowest performing group in their office. (Id. at 43:6–12; JMT Financial Ledger at 2, ECF No. 41-7). As a result, in 2017, JMT directed Cerquetti to cut at least two employees from his group and find other ways to improve the group's financial performance. (Cerquetti Dep. at 48:1–15, 55:14–17; Dec. 28, 2017 Email at 2–6, ECF No. 41-8 (stating that the "group hasn't been able to be profitable," referencing the poor "financial direction of the group," and noting the group's "trouble meeting budgets and schedules")). Rosero was forwarded this communication in 2017. (Dec. 28, 2017 Email at 2).

In 2018, Cerquetti fired two people from his team, Don Simmons, a White man, and Maurice Irvine, a Black man. (Cerquetti Dep. at 51:3–55:17, 106:18–19; Mot. Summ. J. at 4). Cerquetti testified that he terminated those employees "to make the profit margin better," "reduce staff, [and] reduce money." (Cerquetti Dep. at 55:14–17, 70:5–6). Although Rosero was proposed as a possible employee to cut, he was not terminated at that time. (Id. at 51:3–9).

Despite these initial layoffs, Rosero's team continued to struggle financially. One employee, Jun Zhao, a Chinese American man, voluntarily left JMT because "[h]e was suspecting that the work was not there, that there was a lack of work for him to able to do and that [the team] [was] struggling to keep him billable." (Cerquetti Dep. at 53:9–19, 54:1–4, 106:20–21). Further, the team continued to operate at a loss in 2018. (JMT Financial Ledger at 2 (indicating that the team operated at a $21,206 loss that year)). In 2019, Cerquetti testified that he himself was terminated for "financial reasons," and financial reasons only, as a result of the team's performance. (Cerquetti Dep. at 71:9–72:6).

After Cerquetti was fired, Rosero began to report to a new supervisor, Jim Boisseau. (Aff. Jim Boisseau ["Boisseau Aff."] ¶¶ 3, 5, ECF No. 41-3). Boisseau stated in his Affidavit that the team was "overstaffed" and "not profitable," and he had been tasked to "implement[] austerity measures aimed at improving the group's financial performance." (Id. ¶ 4). Boisseau further indicated that he "did not believe that Dr. Rosero was capable of performing structural engineering design, nor did [he] believe that [Rosero] could efficiently perform design support work." (Id. ¶ 8). Boisseau avers that he ultimately selected Rosero for termination in 2019 "due to his higher bill rate when compared to other staff members, and due to factors that impacted his utilization and productivity," including Rosero's lack of competency. (Id. ¶ 13). Boisseau states that Rosero was terminated on June 19, 2019, and that JMT has not backfilled another individual to his position. (Id. at ¶ 14).

In light of this evidence, even assuming Rosero has demonstrated a prima facie case, which is entirely unclear from the materials he has submitted, he cannot show that JMT's legitimate, non-discriminatory reasons for making the employment decision are a pretext for retaliation. Again, to survive summary judgment, Rosero must show that JMT's reasons for terminating his employment

was pretext for JMT's intention to retaliate against him. See Richardson v. Univ. of Md. Shore Reg. Health, Inc., No. SAG-21-669, 2021 WL 6064852, at *8 (D.Md. Dec. 22, 2021).

Rosero does not meet this burden because he fails to meaningfully contest any of JMT's evidence regarding his termination. Rosero argues, without citations to evidence in the record, that his "work was assigned to White Engineers to create the perception that there was a lack of work." (Opp'n at 7). Again, he refers to "substantial documentation that proves that retaliation and disparate treatment was continued," without directing the Court to specific evidence that substantiates his claims. (Id. at 9). Moreover, Rosero fails to contest JMT's cited evidence regarding his team's financial woes, the termination of other employees of different races due to these financial problems, Cerquetti's testimony that he was fired due to his team's performance and for no other reason, namely, supporting Rosero, or Boisseau's claims that Rosero was fired due to his lack of skills and because the team needed to make cuts. Instead, Rosero spends the bulk of his Opposition arguing that JMT's evidence and position in the case is based on "fabricated accounts of what transpired" and claiming that he "disagrees with [JMT's] justification" for its employment decisions. (Opp'n at 10–12). This is simply not sufficient to withstand summary judgment. Without evidence from Rosero on how these legitimate reasons were a pretext for JMT's retaliation, Rosero's retaliation claim must fail. Accordingly, the Court will grant JMT's Motion as to Counts II and VI.

**<u>Wrongful Discharge</u>**

Rosero's remaining claim, wrongful discharge, arises under state law. (Count IV). Federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States" under 28 U.S.C. § 1331, as well as those "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States" under 28 U.S.C. § 1332(a). Still, federal courts are courts of limited jurisdiction and "may not exercise jurisdiction absent a statutory basis." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005). "A court is to presume, therefore, that a case lies outside its limited jurisdiction unless and until jurisdiction has been shown to be proper." United States v. Poole, 531 F.3d 263, 274 (4th Cir. 2008) (citing Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994)). "[B]efore a federal court can decide the merits of a claim, the claim must invoke the jurisdiction of the court." Miller v. Brown, 462 F.3d 312, 316 (4th Cir. 2006).

Here, Rosero no longer has any surviving claims under federal law in this federal question case. The Court has discretion to exercise supplemental jurisdiction "[w]henever the basis for federal jurisdiction evaporates," and may decline to do so when it "has dismissed all claims over which it has original jurisdiction." Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995); 28 U.S.C. § 1367(c)(3). "Among the factors that inform this discretionary determination are convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." Russell v. Cont'l Rest., Inc., 430 F.Supp.2d 521, 528 (D.Md. 2006). The Court declines to exercise supplemental jurisdiction here, where it has dismissed all federal claims, the Complaint presents no federal policy issues, and the Court has an extensive docket of cases over which it exercises original jurisdiction. The remaining claims

should be presented to a state court. Accordingly, the Court will dismiss the remainder of Rosero's case.

**Motion for Sanctions**

Finally, the Court recognizes that Rosero has again moved for sanctions against JMT and JMT's counsel. (Pl.'s Emergency Mot. Sanctions at 1, ECF No. 48). The basis of Rosero's complaint is that JMT has presented only "fabricated and hearsay evidence" and engaged in witness tampering. (ECF No. 48). He claims that he has "endured undue emotional stress, harm to his professional and personal reputation and financial hardship" as a result of JMT's actions and seeks a default judgment against JMT. (Id. at 2).

This Court has already expended judicial resources in resolving Rosero's previous requests for sanctions and has repeatedly found them to be meritless, finding instead that Rosero's conduct may be sanctionable. (See ECF No. 33 (noting that a hearing was held before USMJ to resolve discovery disputes and previous sanctions motion); see also Oct. 25, 2022 Letter Order at 4 (reviewing USMJ decision, finding USMJ's findings were correct and justified, and stating that "sanctions on JMT would be entirely inappropriate")). Again, the Court finds that Rosero's Motion for Sanctions is frivolous as there is no indication that JMT has falsified evidence. As such, the Court sees no reason to sanction JMT or JMT's counsel for their professional handling of this case. The Court will deny Rosero's Motion.

Accordingly, Defendant Johnson, Mirmiran & Thompson's Motion for Summary Judgment (ECF No. 41) is GRANTED. Judgment is ENTERED in favor of JMT. Plaintiff John C. Rosero's Motion for Sanctions (ECF No. 48) is DENIED. The Clerk is directed to CLOSE this case.

Despite the informal nature of this memorandum, it shall constitute an Order of this Court, and the Clerk is directed to docket it accordingly.

/s/
George L. Russell, III
United States District Judge